OPINION OF THE COURT
Harold L. Wood, J.
Michael S., age 36 years, is an illegal substance abuser, and as most addicts he squanders whatever financial assets he has to satisfy his addiction before attending to his other needs. Fortunately for him, he is the beneficiary of a family trust which provides him with a very generous income. He, his girlfriend and her child live in Sagaponack, Long Island, New *876 York, in a house, which according to a witness’s testimony, is being neglected and threatened with real estate tax foreclosure.
Robert Fagenson, a trustee of the above-mentioned trust, on September 8, 1995, by petition, requested the involuntary admission and treatment of Michael S. to Rye Hospital Center,
Rye, New York. This hospital provides services for the mentally ill. Involuntary admission was sought, according to the petition, because "Left untreated, his behavior represents a danger to himself and others.”
This application was supported by the affidavits of his father, and two physicians, Dr. Thomas Landau and Dr. Gershon Yellin, which attest to the disabling effects of that addiction.
A hearing was held on September 30, 1995 to determine whether the patient, Michael S., was in need of involuntary hospitalization. Mr. S. had been involuntarily committed at the Rye Hospital Center since September 8, 1995.
Following the testimony, the court requested that counsel for both the petitioner and the State of New York Mental Hygiene Legal Services present written memorandum of law on the issues of this case. The compelling issue confronting the court is whether narcotic addition, in and of itself, is a mental illness which would justify involuntary retention.
At the time of his admission to Rye Psychiatric Hospital his use of drugs included 10 bags daily of heroin, in addition to two grams of crack. Additionally, he had at least two alcoholic drinks daily. Over the years he has experimented with drug rehabilitation programs. His family’s financial status has enabled- him to undergo expensive detoxification courses at well-known rehabilitation establishments, such as Hazelden and Silver Hill. He accepts drug treatments, but has not made any commitment to discontinue the use of drugs. Upon his admission to Rye Psychiatric Hospital he was diagnosed as "Opioid Dependency”. Drugs play a very significant part in how he lives. He chooses to be a drug abuser and he has the funds to support his depressing lifestyle.
Dr. John Preston Ewing, his treating psychiatrist, testified that he diagnosed his patient as having a "Narcissistic personality disorder, suffering from depression, as well as being opioid dependent.” He further determined that Michael S.’s long history of heroin, crack, cocaine and alcohol abuse was preceded by chronic self-esteem problems and he concluded that the self-destructive lifestyle was being used as a defense *877 against his problems. Two other physicians at Rye Psychiatric Hospital also concluded by affidavits that Mr. S. suffered from severe drug dependency, exhibited poor judgment and insight, and required hospitalization. All these physicians are of the opinion that Mr. S. is a danger to himself and to others due to his narcotic addiction.
It is the policy of the State of New York that the mental health of its people be protected and that those persons afflicted by the disabilities of alcoholism, mental illness, substance abuse, mental retardation and developmental disabilities receive appropriate care and treatment. These are matters of public concern, and treatment will be rendered accordingly to the residents who are disabled according to their individualized needs, to enable them to realize their fullest potential for self-fulfillment and independent living in society whenever possible (Mental Hygiene Law § 1.01).
A director of a hospital may receive and retain as a patient any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians (Mental Hygiene Law § 9.27). This was done in this case. " 'In need of involuntary care and treatment’ means that a person has a mental illness for which care and treatment as a patient in a hospital is essential to such person’s welfare and whose judgment is so impaired that he or she is unable to understand the need for such care and treatment.” (Mental Hygiene Law § 9.01.)
Involuntary civil commitment requires clear and convincing evidence that the subject of a commitment proceeding be mentally ill and in need of involuntary care and treatment and that the subject poses a substantial threat of physical harm to himself or herself or to others (O’Connor v Donaldson, 422 US 563, 575-576 [1975]). A finding of mental illness alone cannot justify a State’s locking up a person against his will and keeping him indefinitely in a simple custodian confinement; nor may a State constitutionally confine, without more, a nondangerous individual who is capable of surviving safely in freedom, by himself or with the help of willing and responsible family members or friends. (O’Connor v Donaldson, supra.)
Michael S.’s underlying disturbances in behavior, feeling, and thinking directly stem from a drug addiction and not a mental illness. There is no medical evidence to equate mental illness with drug addiction.
*878 A person suffering from a mental illness may be involuntarily confined to a psychiatric facility which can treat and care for such illness. An institution such as Rye Psychiatric Hospital is not the proper institution to provide treatment for drug addicts. The State of New York has such institutions and Michael S. may be qualified to enter such a place. Private institutions have failed Michael S. because he was not sincere when family interests intervened in his abominable, corrosive lifestyle.
On the basis of the record, the testimony of Dr. Ewing, Mr. Allan S. and Michael S., Rye Psychiatric Hospital has not met the requisite standard for retention. The petition is dismissed and Michael S. is to be released.